

Marcos D. Sasso (SBN 228905)
sassom@ballardspahr.com
Tanya M. Taylor (SBN 312881)
taylortm@ballardspahr.com
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400
Facsimile: 424.204.4350

Attorneys for Plaintiff
CITIBANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CITIBANK, N.A.,

Plaintiff,

v.

JENNIFER A. KASH,

Defendant.

CASE NO. 3:19-cv-04634

**COMPLAINT FOR BREACH OF PAYMENT OBLIGATION UNDER PROMISSORY NOTE**

**COMPLAINT**

Plaintiff Citibank, N.A., ("Citibank") through counsel, for its Complaint against Defendant Jennifer A. Kash, a citizen of California, alleges and states as follows:

PARTIES

1. Citibank is a federally-chartered national banking association that transacts business in California. Citibank is not a citizen of California for purposes of determining the state of domicile for federal diversity jurisdiction.



Ballard Spahr LLP
655 West Broadway, Suite 1600
San Diego, CA 92101-8494
Telephone: 619.696.9200

Ballard Spahr LLP
655 West Broadway, Suite 1600
San Diego, CA 92101-8494
Telephone: 619.696.9200

2. Jennifer A Kash ("Defendant") is an individual citizen of the state of California, who executed two promissory notes in favor of Citibank, by which she agreed that service of process may be effected upon her by delivery to 1830 McAllister Street, San Francisco, CA 94115.

## JURISDICTION

3. Plaintiff brings its complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are diverse in citizenship and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over Defendant based on Defendant's residence in California and her submission to jurisdiction in this Court.

5. In addition, as further described below, the promissory notes underlying this action specifically provide that in any action or proceeding brought against Defendant arising from her obligations under the promissory notes, Defendant irrevocably submits to the jurisdiction of any state or federal court sitting in San Francisco.

## VENUE

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the obligations to be performed by Defendant arose in this district, and the promissory notes underlying this action were executed within this district.

7. Venue also is appropriate in this Court because the written promissory notes, described further below, provide that any action or proceeding arising out of or related to those agreements may be filed in any federal or state court sitting in San Francisco.

## BACKGROUND

8. On October 23, 2017, Citibank extended a term loan to Defendant in the original principal amount of $1,400,000.00 ("Loan"). In exchange for these loan proceeds, Defendant executed a Term Note ("Term Note"). A true and correct copy of the Term Note is attached as

**Exhibit 1** and incorporated herein by reference.

9. On the same date, Citibank extended a revolving line of credit to Defendant in the amount of $500,000.00 ("Loan"), in exchange for which Defendant executed a Revolving Credit – Term Note ("Revolving Credit – Term Note"). A true and correct copy of the Revolving Credit – Term Note is attached as **Exhibit 2** and incorporated herein by reference.

10. At the time of the making of the Term Note and the Revolving Credit – Term Note, Defendant was the managing partner of the San Francisco office of the law firm of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel").

11. Pursuant to the provisions of the Term Note, Defendant agreed that she would pay the principal sum of $1,400,000.00, plus monthly interest and other charges set forth therein, in accordance with the repayment schedule set forth in Paragraph 2 of the Term Note. *See* Ex. 1 at ¶¶ 2, 5.

12. Pursuant to the provisions of the Revolving Credit – Term Note, Defendant agreed that she would pay monthly interest in accordance with the terms of the Revolving Credit – Term Note, and that she would repay the unpaid amount of all advances made on or before November 30, 2019. *See* Ex. 2 at ¶¶ 1, 5.

13. Pursuant to the provisions of the Term Note and the Revolving Credit – Term Note, Defendant agreed to pay "all costs and expenses, if any, in connection with the collection or enforcement of the Obligations (whether though negotiations, legal proceedings, or otherwise), including without limitation reasonable attorneys' fees[.]" *See* Ex. 1 at ¶ 17, and Ex. 2 at ¶ 17.

12. The Term Note and the Revolving Credit – Term Note each provide that Defendant will be in default if she "cease[s] to be a partner at [her] current firm." *See* Ex. 1 at ¶ 14(c), and Ex. 2 at ¶ 14(c). The Term Note and the Revolving Credit – Term Note further provide that Defendant will be in default if she "fail[s] to pay any of [her] Obligations when due[.]" *See* Ex. 1 at ¶ 14 (a),

Ballard Spahr LLP
655 West Broadway, Suite 1600
San Diego, CA 92101-8494
Telephone: 619.696.9200

Ballard Spahr LLP
655 West Broadway, Suite 1600
San Diego, CA 92101-8494
Telephone: 619.696.9200

and Ex. 2 at ¶ 14(a).

13. Defendant failed to pay the amount of $200,000.00 that was due and owing to Citibank on January 15, 2019 pursuant to the Repayment Schedule of the Term Note. *See* Ex. 1 at ¶ 2.

14. Defendant failed to pay the amount of $7,728.77 that was due and owing to Citibank on February 1, 2019 for monthly interest in accordance with the Term Note. *See* Ex. 1 at ¶ 5.

15. Defendant failed to pay the amount of $6,980.82 that was due and owing to Citibank on March 1, 2019 for monthly interest in accordance with the Term Note. *See* Ex. 1 at ¶ 5.

16. Defendant failed to pay the amount of $2,109.59 that was due and owing to Citibank on March 1, 2019 for monthly interest in accordance with the Revolving Credit – Term Note. *See* Ex. 2 at ¶ 5.

17. Defendant failed to pay the amount of $2,335.62 that was due and owing to Citibank on April 1, 2019 for monthly interest in accordance with the Revolving Credit – Time Note. *See* Ex. 2 at ¶ 5.

18. At no time since April, 2019, has Defendant made any payment on either the Term Note or the Revolving Credit – Term Note.

19. Defendant is in default under the Term Note and the Revolving Credit – Term Note due to her failure to pay her obligations to Citibank as and when due.

20. Defendant is also in default because she has ceased to be a partner at Quinn Emanuel.

21. Although Plaintiff has made demand, Defendant has not paid the full amount due on the Term Note or the Revolving Credit – Time Note.

22. As of August 9, 2019, Defendant's total obligation to Citibank under the Term Note is $1,354,778.08, consisting of principal in the amount $1,300,000.00 and accrued and unpaid interest in the amount of $54,778.08.

23. As of August 9, 2019, Defendant's total obligation to Citibank under the Revolving Credit – Term Note is $514,212.33, consisting of principal in the amount of $500,000.00 and accrued and unpaid interest in the amount of $14,212.33.

24. Interest on the outstanding principal balance of both debts continues to accrue at the rate of interest as set forth in the Term Note and the Revolving Credit – Term Note.

CLAIMS FOR RELIEF

COUNT I: BREACH OF PAYMENT OBLIGATION UNDER PROMISSORY NOTE

25. Citibank incorporates the allegations in the foregoing paragraphs 1-24 as if fully set forth herein.

26. On or about October 23, 2017, Citibank and Defendant entered into a loan contract, the payment obligations of which are evidenced by the Term Note.

27. Citibank has performed all the conditions, covenants, promises and agreements required of it under the terms of the loan contract by having disbursed to Defendant the sum of $1,400,000.00.

28. Defendant has failed, and continues to fail, to perform her unconditional promise to pay in accordance with the provisions of the Term Note. In particular, Defendant has not met her obligation to pay the principal amount of the loan, and all interest owing on the principal amount of the loan, despite the obligation of Defendant to pay such amounts.

29. Plaintiff demanded repayment of the full amount due under the Term Note by letter to Defendant dated April 19, 2019. Defendant has failed to repay the full amount due.

30. The Term Note provides that in the event legal action is taken by Citibank to enforce its rights, Defendant promises to pay "all costs and expenses . . . including without limitation reasonable attorneys' fees[.]" *See* Ex. 1 at ¶ 17.

31. Plaintiff has employed the law firm of Ballard Spahr, LLP to enforce the Term Note,

Ballard Spahr LLP
655 West Broadway, Suite 1600
San Diego, CA 92101-8494
Telephone: 619.696.9200

which has necessitated the filing of this action due to Defendant's failure to repay the full amount due under the Term Note.

32. As of August 9, 2019, Defendant's total obligation to Citibank under the Term Note is $1,354,778.08, consisting of principal in the amount $1,300,000.00 and accrued and unpaid interest in the amount of $54,778.08. Interest continues to accrue in accordance with the provisions of the Term Note. Defendant is also obligated under the Term Note to pay the attorneys' fees and costs incurred by Citibank that are associated with the enforcement of the Term Note and the filing of this action.

WHEREFORE, Citibank prays for judgment against Defendant for Count I in an amount to be proven at trial not less than $1,354,778.08, plus pre- and post-judgment interest as allowed by law, costs and disbursements in accordance with the Term Note, attorneys' fees as permitted by the Term Note, and such other relief as the Court deems just and proper.

COUNT II: BREACH OF PAYMENT OBLIGATION UNDER PROMISSORY NOTE

33. Citibank incorporates the allegations in the foregoing paragraphs 1-32 as if fully set forth herein.

34. On or about October 23, 2017, Citibank and Defendant entered into a loan contract, the payment obligations of which are evidenced by the Revolving Credit – Term Note.

35. Citibank has performed all the conditions, covenants, promises and agreements required of it under the terms of the loan contract by having disbursed to Defendant the sum of $500,000.00.

36. Defendant has failed, and continues to fail, to perform her unconditional promise to pay in accordance with the provisions of the Revolving Credit - Term Note. In particular, Defendant has not met her obligation to pay the principal amount of the loan, and all interest owing on the principal amount of the loan, despite the obligation of Defendant to pay such amounts.

Ballard Spahr LLP
655 West Broadway, Suite 1600
San Diego, CA 92101-8494
Telephone: 619.696.9200

37. Plaintiff demanded repayment of the overdue interest due under the Revolving Credit – Term Note by letter to Defendant dated April 19, 2019. Defendant has failed to repay the full amount due.

38. The Revolving Credit – Term Note provides that in the event legal action is taken by Citibank to enforce its rights, Defendant promises to pay "all costs and expenses . . . including without limitation reasonable attorneys' fees[.]" *See* Ex. 2 at ¶ 17..

39. Plaintiff has employed the law firm of Ballard Spahr, LLP to enforce the Revolving Credit – Term Note, which has necessitated the filing of this action due to Defendant's failure to repay the full amount due under the Revolving Credit – Term Note.

40. As of August 9, 2019, Defendant's total obligation to Citibank under the Revolving Credit – Term Note is $514,212.33, consisting of principal in the amount $500,000.00 and accrued and unpaid interest in the amount of $14,212.33. Interest continues to accrue in accordance with the provisions of the Revolving Credit – Term Note. Defendant is also obligated under the Revolving Credit – Term Note to pay the attorneys' fees incurred by Plaintiff that are associated with the enforcement of the Revolving Credit – Term Note and the filing of this action.

Ballard Spahr LLP
655 West Broadway, Suite 1600
San Diego, CA 92101-8494
Telephone: 619.696.9200

WHEREFORE, Citibank prays for judgment against Defendant for Count II in an amount to be proven at trial not less than $514,212.33, plus pre- and post-judgment interest as allowed by law, costs and disbursements in accordance with the Revolving Credit – Term Note, attorneys' fees as permitted by the Revolving Credit – Term Note, and such other relief as the Court deems just and proper.

DATED: August 9, 2019

Respectfully submitted,
BALLARD SPAHR LLP
Marcos D. Sasso

By:*/s/ Marcos D. Sasso*
Marcos D. Sasso

By:/s/ *Tanya M. Taylor*
Tanya M. Taylor

Attorneys for Plaintiff
CITIBANK, N.A.

Ballard Spahr LLP
655 West Broadway, Suite 1600
San Diego, CA 92101-8494
Telephone: 619.696.9200

# EXHIBIT 1

CURRENT

# Term Note
Alternate Base Rate (Lawyers)

**$1,400,000.00**
(Amount)

**San Francisco, CA**
(City and State)

**October 23, 2017**
(Date)

(In this Note the words "I", "me", "my" and "mine" mean each and all who sign it. The words "you" and "your" mean Citibank, N.A., or any other owner of this Note.)

**1. Promise To Pay; Minimum Initial Advance** I promise to pay to your order at your office or branch located at **One Sansome Street, 24th Floor, San Francisco, CA 94104**, (the "**Office**") the principal sum (the "**Loan**") of **One Million, Four Hundred Thousand US Dollars ($1,400,000.00)**, in accordance with the schedule set forth below in the section headed Repayment Schedule. I understand that the initial advance under this Note must be at least $60,000. I also agree to pay simple interest on the daily outstanding principal balance under this Note (as extended, amended and restated or otherwise modified from time to time, the "**Note**") at the rate per annum equal to the **Alternate Base Rate plus the Alternate Base Rate Margin (each as defined below)**, from the date of funding this Loan to, but excluding, the Business Day when the Loan is paid in full. "**Business Day**" means any day (a) (other than a Saturday or Sunday) on which you are open for business in New York City and (b) on which dealings in U.S. dollars are carried on in the London interbank market.

**2. Repayment Schedule** I promise to repay the Loan in accordance with the schedule set forth below:

| Reduction Date | Amortization Amount | Remaining Balance |
|---|---|---|
| 7/15/2018 | $100,000.00 | $1,300,000.00 |
| 1/15/2019 | $200,000.00 | $1,100,000.00 |
| 4/15/2019 | $225,000.00 | $875,000.00 |
| 7/15/2019 | $225,000.00 | $650,000.00 |
| 10/15/2019 | $225,000.00 | $425,000.00 |
| 1/15/2020 | $425,000.00 | $0.00 |

**3. Rate of Interest** "**Alternate Base Rate**" for any day, is an annual rate of interest equal to the highest of: (a) the Base Rate in effect on such day; (b) the Federal Funds Rate in effect on such day plus 2.0%; or (c) the one-month LIBOR Rate for such day (or if such day is not a Business Day, the immediately preceding Business Day) plus 2.0%.

"**Alternate Base Rate Margin**" is **1.50%** per annum.

"**Base Rate**" is a fluctuating annual rate of interest in effect from time to time announced publicly by Citibank, N.A. as its base rate in effect in New York, New York (which I acknowledge and agree is announced by Citibank, N.A. for reference purposes only and may not represent the lowest or best rate available to any of its customers).

"**Federal Funds Rate**" is equal to (i) the weighted average of the rates on overnight Federal funds transactions with members of the Federal Reserve System arranged by Federal funds brokers, as published for such day (or, if such day is not a Business Day, for the preceding Business Day) by the Federal Reserve Bank of New York, or (ii) if such rate is not so published for any day that is a Business Day, the average of the quotations at approximately 11:00 a.m., New York City time, for the day for such transactions received by Citibank, N.A. from three Federal funds brokers of recognized standing selected by it.

"**LIBOR Rate**" for any one-month interest period, is the London interbank offered rate administered by ICE Benchmark Administration Limited (or any successor to, or substitute for, such service which provides comparable rate quotations) for U.S. dollar deposits with a maturity equal to relevant interest period, and if that rate is less than zero, LIBOR Rate will be equal to zero. If such rate is not available at such time for any reason, then the "LIBOR Rate" for such interest period will be the rate per annum determined by you to be the rate at which U.S. dollar deposits with a term equivalent to such interest period would be offered by Citibank, N.A. in London, England to major banks in the London or other offshore interbank market at approximately 11:00 a.m. (London time) two Business Days prior to the commencement of such interest period, and if that rate is less than zero, the LIBOR Rate will be equal to

CURRENT

zero.
You will compute interest on the basis of a year of 365/366 days, and your determination of the interest rate will be conclusive and binding, absent manifest error.
Notwithstanding the foregoing, any principal balance of this Note which is not paid when due (whether on a scheduled repayment date, by acceleration or otherwise) will bear interest from the date on which such amount was due to, but excluding, the Business Day when such amount is paid in full, at a rate per annum equal to 4% per annum above the "Alternate Base Rate" plus the "Alternate Base Rate Margin". Nothing in this paragraph will obligate me to pay, or allow you to receive, interest in excess of the maximum rate permitted by applicable law.

**4. Set -up Fee** I will pay you a set-up fee in the amount of **$500.00** when I sign this Note.

**5. Interest Payment** Interest on the unpaid principal balance of this Note is payable **Monthly** in arrears beginning on **November 01, 2017.**

**6. Prepayment** I may prepay this Loan in part or in full at any time without penalty.

**7. Use of Proceeds** I will use the proceeds of the Loan for any lawful purpose, and no proceeds of the Loan will be used to (i) repay a loan made by any of your affiliates or (ii) finance gambling enterprises, purchase military arms or finance or make contributions to political candidates or organizations.

**8. Financial Statements, Etc.** I agree to furnish you with my financial statement upon your request, in form acceptable to you. I understand that you may decide in your discretion not to request such financial statement, but the absence of such a request does not limit your right to request such financial statement at any time and from time to time. I also agree to furnish you with such other financial information (including, without limitation, income verification) that you may reasonably request, as well as notice of any adverse change in my financial condition.

**9. Deposits and Right of Setoff** I understand you have the right, without prior notice to me, to apply the amounts in certain of my deposit accounts with you, if any, to whatever I owe you under this Note.

**10. Illegality, Unavailability** If you notify me that as a result of any Change in Law, it is unlawful, for you to make or maintain the Loan at the LIBOR Rate, then: (i) your obligation to make a LIBOR Rate Loan will be suspended until you notify me that the circumstances causing such suspension no longer exist and (ii) I will immediately prepay in full the existing LIBOR Rate Loan together with interest accrued, unless I, within five business days of notice from you, elect to convert such LIBOR Rate Loan to an Alternate Base Rate Loan. In addition, if you notify me that due to circumstances affecting the London interbank market for U.S. dollar deposits there are no adequate and reasonable means to ascertain the LIBOR Rate, then, on such day, the LIBOR Loan will automatically convert to an Alternate Base Rate Loan (and I will accept such conversion) until you will notify me that the circumstances causing such suspension no longer exist.
"**Change in Law**" means the occurrence, after the date of this Note, of any of the following: (a) the adoption or taking effect of any law, rule, regulation or treaty, (b) any change in any law, rule, regulation or treaty or in the administration, interpretation, implementation or application thereof by any governmental authority or (c) the making or issuance of any request, rule, guideline or directive (whether or not having the force of law) by any governmental authority; provided that notwithstanding anything herein to the contrary, (i) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all requests, rules, guidelines and directives thereunder or issued in connection therewith and (ii) all requests, rules, guidelines and directives promulgated by the Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities will, in each case be deemed to be a "Change in Law," regardless of the date enacted, adopted or issued.

**11. Increased Costs** If you determine that any Change in Law regarding capital or liquidity requirements has or would have the effect of reducing the rate of return on your capital, if any, as a consequence of this Note or the Loan made hereunder, to a level below that which you could have achieved but for such Change in Law (taking into consideration your policies with respect to capital adequacy and liquidity), then from time to time I will pay you such additional amount or amounts as will compensate you for any such reduction suffered.
You will deliver to me a certificate setting forth the amount necessary to compensate you, which certificate will be conclusive absent manifest error. I will pay you the amount shown as due on any such certificate within 10 days after receipt thereof.

**12. Representations and Warranties**

I represent and warrant to you that on the date of this Note:

a. my execution, delivery and performance of this Note (i) do not contravene any law, rule, regulation, court decree or order or contractual restriction binding on or affecting me and (ii) will not result in a breach of, or entitle any party to terminate or call a default under, or result in the acceleration or required prepayment of, any loan agreement, indenture, mortgage, note, lease or other agreement binding on or otherwise affecting me;

b. except as disclosed in writing to you prior to the date of this Note, there is no (i) unsatisfied order, judgment or other proceeding affecting me, (ii) pending tax assessment affecting me or (iii) pending or, to my knowledge, threatened, investigation, litigation or proceeding affecting me, that in each case (x) could be reasonably expected to have a Material Adverse Effect or (y) purports to affect the legality, validity, enforceability or my performance of this Note;

c. since the date of my application given to you, no event has or series of events have occurred that could be reasonably expected to, individually or in the aggregate, have a Material Adverse Effect;

d. I am not subject to any law, regulation, or list of any government agency (including, without limitation, the U.S. Office of Foreign Asset Control List) that prohibits or limits you from making this Loan to me or from otherwise conducting business with me;

e. I am not, and to my knowledge I am not associated with any person who is, (i) listed on or (ii) engages in any dealings or transaction prohibited by, Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), or any other list promulgated under the Patriot Act;

f. I am not a target of any economic sanctions, laws, regulations, embargoes or restrictive measures administered or enforced by the United States government;

g. I have timely filed all tax returns required in any jurisdiction and have paid all taxes, levies, imposts, duties, deductions, assessments, fees or other charges and withholdings (including back-up withholding) imposed by any governmental authority, including any applicable interest, expenses, additions to tax or penalties which are shown to be due and payable on such returns. I am not aware of any proposed additional tax assessment or tax to be assessed against or applicable to me; and

h. I am solvent, am able to pay my debts as they become due and now own property having a value both at fair valuation and a present fair salable value greater than the amount required to pay such debts as they mature, and I will not be rendered insolvent, or be left with insufficient capital, or be unable to pay my debts as they mature, due to my execution, delivery and performance of this Note.

"**Material Adverse Effect**" means a material adverse effect on: (a) my ability to pay my Obligations under this Note or (b) the legality, validity or enforceability of this Note.

"**Obligations**" means, collectively, my obligations to pay, as and when due and payable (by scheduled maturity, on demand or otherwise) (i) all amounts I owe from time to time in respect of this Note (including any extensions, modifications, amendments or renewals hereof), whether direct or indirect, absolute or contingent, now existing or hereafter arising, (ii) any interest and fees that accrue after the commencement by or against me of any proceeding under bankruptcy or insolvency law, regardless of whether such interest or fees are allowed claims in such proceeding and (iii) the Collection Costs.

**13. Covenants**

So long as any Obligations remain outstanding and unpaid, I will, unless you otherwise consent in writing:

a. Comply in all material respects with all applicable laws, rules, regulations and orders, such compliance to include, without limitation, paying before the same become delinquent all taxes, assessments and governmental charges imposed upon me, except to the extent I contest them in good faith and by appropriate proceedings and for which I have established appropriate reserves;

b. Not (i) be or become subject to at any time to any law, regulation, or list of any government agency (including, without limitation, the U.S. Office of Foreign Asset Control List) that prohibits or limits you from making this Loan to me or from otherwise conducting business with me, or (ii) fail to provide documentary and other evidence of my identity that you may request at any time to enable you to verify my identity or to comply with any applicable law or regulation, including, without limitation, Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318; and

c. Notify you immediately in the event I become listed on Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), or any other list promulgated under the Patriot Act or am indicted, arraigned, or custodially detained on charges involving money laundering or predicate crimes to money laundering.

**14. Default**

I will be in default under this Note if any of the following events occur:



CURRENT CURRENT CURRENT

CURRENT

a. I fail to pay any of my Obligations when due;
b. I fail to observe any other term or condition of this Note;
c. I cease to be a partner at my current firm or company;
d. I die, become incapacitated or incompetent, or my income is substantially reduced;
e. I make any representation or warranty under or in connection with this Note or any financial statement delivered in connection herewith that is false or misleading in any way;
f. I become insolvent, take advantage of any insolvency law or any proceeding in bankruptcy or insolvency is started by or against me;
g. A receiver or conservator is appointed for any of my property;
h. I make an assignment for the benefit of creditors;
i. I fail to generally pay my debts as they become due;
j. I admit in writing my inability to generally pay my debts; or
k. An event occurs which in your sole opinion would have a Material Adverse Effect.

**15. Consequences of Default** If I am in default, the Loan will become and be immediately due and payable upon your notice to me. Notwithstanding the preceding sentence, if I am in default under part f, g or h of the section above headed Default, the Loan will become and be immediately due and payable without your having to give me any notice.

**16. Waiver; Delay in Enforcement** I specifically waive any legal requirements of presentment for payment, demand, protest, notice of dishonor and notice of protest of this Note. You can delay enforcing any of your rights without losing them.

**17. Collection and Enforcement Costs** I agree to pay, on demand, all costs and expenses, if any, in connection with the collection or enforcement of the Loan under the terms of this Note (whether through negotiations, legal proceedings or otherwise), including without limitation reasonable attorneys' fees and their disbursements, court costs and your disbursements in connection with the enforcement of your rights under this Note (collectively, the "**Collection Costs**").

**18. Changes** The terms of this Note may not be changed without written authorization from you and me.

**19. Heirs; Executors** My Obligations under this Note will also be binding upon my heirs, executors and administrators.

**20. More Than One Signer** If there is more than one signer of this Note, each signer is fully and personally responsible for complying with all its terms and conditions, including the promise to pay the full amount owed under this Note. You may enforce your rights under this Note against each signer separately or against all signers together. This means that any one signer individually may be required to pay all amounts owed under this Note, including any advances made at the request of and to any one of them. A release of any signer from the obligations of this Note will in no way release any other signer from his or her obligations.

**21. Transfer of Note and Discharge of Liability** I understand that I may not assign or otherwise transfer any of my rights or Obligations under this Note without your prior written consent. You may transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to you with respect to this Note; and you will then be forever relieved and fully discharged from any liability or responsibility in the matter.

**22. Pledge to the Federal Reserve** You may at any time pledge or assign a security interest in all or any portion of your rights under this Note to secure your obligations, including any pledge or assignment to secure obligations to a Federal Reserve Bank; provided that no such pledge or assignment will release you from any of your obligations under this Note or substitute any such pledgee or assignee for you as a party to this Note.

**23. Applicable Law** I agree that this Note will be governed by the laws of the State of California.

**24. Submission to Jurisdiction** Without limiting your right to bring any action or proceeding against me or against my property arising out of or relating to my Obligations under this Note (an "**Action**") in the courts of other jurisdiction(s), I irrevocably submit to the jurisdiction of any California State or federal court sitting in the county in which the Office is located, and I irrevocably agree that any Action may be heard and determined in such California State court or in such federal court. I irrevocably waive to the fullest extent that I may effectively do so, the defense of an inconvenient forum to the maintenance of any Action in any jurisdiction. I irrevocably agree that the summons and complaint or any other process in any Action in any



CURRENT
CURRENT

jurisdiction may be served by mailing to any of the addresses set forth below or by hand delivery to a person of suitable age and discretion at any of the addresses set forth below. Such service will be complete on the date such process is so mailed or delivered. I may also be served in any other manner permitted by law.

**25. Credit Authorization** I authorize you and your affiliates to obtain credit reports on me from time to time until the Obligations are paid in full.

**26. Patriot Act** I acknowledge that pursuant to the requirements of the Patriot Act, you are required to obtain, verify and record information that will allow you to identify me in accordance with the Patriot Act. I will promptly following a request by you from time to time, provide all documentation and other information that you request in order to comply with your ongoing obligations under the Patriot Act.

**[Signature Page to follow]**

CURRENT CURRENT CURRENT

Name of Borrower: **Jennifer A. Kash**

Signature of Borrower:______________________________

Address: **1830 McAllister Street**
**San Francisco, CA 94115**

Name of Borrower:

Signature of Borrower:______________________________

**Auto-Debit Authorization and Agreement ("Authorization")**

I authorize and direct Citibank, N.A. ("Citi") to initiate scheduled debit entries ("Debits") to my Citi account indicated below to pay interest due under this Note **Monthly** in arrears. This Authorization will remain in effect until I terminate it by written or electronic notice to Citi. At least 10 days in advance of each Debit, Citi will notify me of the estimated amount of the Debit based on the applicable interest rate in my Note followed by notice of the actual amount of the Debit sent at the time of the actual Debit. I understand that the actual amount of the Debit to my account may differ from the estimated amount due to changes in the interest rate index or account balance at the time the actual Debit is initiated.

I understand that I have the right to stop these Debits by calling or writing to Citi at the address listed above, in time for Citi to receive my request 3 Business Days or more before the actual Debit is scheduled to be made. I also understand that I have the right to end these authorized payments at any time by calling or writing to Citi at the same address. Citi reserves the right to cancel the terms of this Authorization if there are insufficient funds in my account for any three consecutive Debits. I understand and agree that if my account does not have sufficient funds to make my interest payment, Citi will not be responsible or liable for any penalties or charges assessed as a result of such insufficiency. Citi also reserves the right to change the terms and conditions of this Authorization after 21 days prior written notice to me.

Account Number:__________

Account Holder Signature:__________________________
**Jennifer A. Kash**

Date:___________



CURRENT CURRENT CURRENT

# EXHIBIT 2

# Revolving Credit - Term Note

Alternate Base Rate (Lawyers)

**$500,000.00** (Amount) | **San Francisco, CA** (City and State) | **October 23, 2017** (Date)

(In this Note the words "I", "me", "my" and "mine" mean each and all who sign it. The words "you" and "your" mean Citibank, N.A., or any other owner of this Note.)

1. **Promise To Pay; Revolving Feature; Minimum Initial Advance** I understand that you may make advances to me from time to time, in your sole discretion, in an aggregate amount at any one time outstanding not in excess of **Five Hundred Thousand US Dollars** (**$500,000.00**) (the "**Loan**"); and I understand that I may repay and, in your discretion, reborrow such advances. I understand that the initial advance under this Note must be at least $60,000. On **November 30, 2019** I promise to pay to your order at your office or branch located at **One Sansome Street, 24th Floor, San Francisco, CA 94104**, (the "**Office**") the unpaid amount of all advances made plus simple interest on the daily outstanding principal balance under this Note (as extended, amended and restated or otherwise modified from time to time, the "**Note**") at the rate per annum equal to the **Alternate Base Rate plus the Alternate Base Rate Margin** (each as defined below), from the date of funding this Loan to, but excluding, the Business Day when the Loan is paid in full. "**<u>Business Day</u>**" means any day (a) (other than a Saturday or Sunday) on which you are open for business in New York City and (b) on which dealings in U.S. dollars are carried on in the London interbank market.

2. **Discretionary Advances** **<u>I understand that nothing contained in this Note creates or implies the existence of any commitment or obligation by you to make advances to me, and that any and all advances under this Note are in your sole discretion. You have the right to refuse to grant any advance to me.</u>**

3. **Rate of Interest** "**<u>Alternate Base Rate</u>**" for any day, is an annual rate of interest equal to the highest of: (a) the Base Rate in effect on such day; (b) the Federal Funds Rate in effect on such day plus 2.0%; or (c) the one-month LIBOR Rate for such day (or if such day is not a Business Day, the immediately preceding Business Day) plus 2.0%.
"**<u>Alternate Base Rate Margin</u>**" is **0.00%** per annum.
"**<u>Base Rate</u>**" is a fluctuating annual rate of interest in effect from time to time announced publicly by Citibank, N.A. as its base rate in effect in New York, New York (which I acknowledge and agree is announced by Citibank, N.A. for reference purposes only and may not represent the lowest or best rate available to any of its customers).
"**<u>Federal Funds Rate</u>**" is equal to (i) the weighted average of the rates on overnight Federal funds transactions with members of the Federal Reserve System arranged by Federal funds brokers, as published for such day (or, if such day is not a Business Day, for the preceding Business Day) by the Federal Reserve Bank of New York, or (ii) if such rate is not so published for any day that is a Business Day, the average of the quotations at approximately 11:00 a.m., New York City time, for the day for such transactions received by Citibank, N.A. from three Federal funds brokers of recognized standing selected by it.
"**<u>LIBOR Rate</u>**" for any one-month interest period, is the London interbank offered rate administered by ICE Benchmark Administration Limited (or any successor to, or substitute for, such service which provides comparable rate quotations) for U.S. dollar deposits with a maturity equal to relevant interest period, and if that rate is less than zero, LIBOR Rate will be equal to zero. If such rate is not available at such time for any reason, then the "LIBOR Rate" for such interest period will be the rate per annum determined by you to be the rate at which U.S. dollar deposits with a term equivalent to such interest period would be offered by Citibank, N.A. in London, England to major banks in the London or other offshore interbank market at approximately 11:00 a.m. (London time) two Business Days prior to the commencement of such interest period, and if that rate is less than zero, the LIBOR Rate will be equal to zero.
You will compute interest with respect to each advance on the basis of a year of 365/366 days, and your determination of the interest rate will be conclusive and binding, absent manifest error.
Notwithstanding the foregoing, any principal balance of this Note which is not paid when due (whether on a scheduled repayment date, by acceleration or otherwise) will bear interest from the date on which such amount was due to, but excluding, the Business Day when such amount is paid in full, at a rate per



CURRENT CURRENT CURRENT

annum equal to 4% per annum above the "Alternate Base Rate" plus the "Alternate Base Rate Margin". Nothing in this paragraph will obligate me to pay, or allow you to receive, interest in excess of the maximum rate permitted by applicable law.

**4. Set -up and Administrative Fee** I will pay you a set-up fee in the amount of **$0.00** when I sign this Note. I will pay you an administrative fee in the amount of **$0.00** on the XX day of each XX during the term of this Note.

**5. Interest Payment** Interest on the unpaid principal balance of this Note is payable **Monthly** in arrears beginning on **November 01, 2017.**

**6. Prepayment** I may prepay this Loan in part or in full at any time without penalty.

**7. Use of Proceeds** I will use the proceeds of the Loan for any lawful purpose, and no proceeds of the Loan will be used to (i) repay a loan made by any of your affiliates or (ii) finance gambling enterprises, purchase military arms or finance or make contributions to political candidates or organizations.

**8. Financial Statements, Etc.** I agree to furnish you with my financial statement upon your request, in form acceptable to you. I understand that you may decide in your discretion not to request such financial statement, but the absence of such a request does not limit your right to request such financial statement at any time and from time to time. I also agree to furnish you with such other financial information (including, without limitation, income verification) that you may reasonably request, as well as notice of any adverse change in my financial condition.

**9. Deposits and Right of Setoff** I understand you have the right, without prior notice to me, to apply the amounts in certain of my deposit accounts with you, if any, to whatever I owe you under this Note.

**10. Illegality, Unavailability** If you notify me that as a result of any Change in Law, it is unlawful, for you to make or maintain the Loan at the LIBOR Rate, then: (i) your obligation to make a LIBOR Rate Loan will be suspended until you notify me that the circumstances causing such suspension no longer exist and (ii) I will immediately prepay in full the existing LIBOR Rate Loan together with interest accrued, unless I, within five business days of notice from you, elect to convert such LIBOR Rate Loan to an Alternate Base Rate Loan. In addition, if you notify me that due to circumstances affecting the London interbank market for U.S. dollar deposits there are no adequate and reasonable means to ascertain the LIBOR Rate, then, on such day, the LIBOR Loan will automatically convert to an Alternate Base Rate Loan (and I will accept such conversion) until you will notify me that the circumstances causing such suspension no longer exist.

"**Change in Law**" means the occurrence, after the date of this Note, of any of the following: (a) the adoption or taking effect of any law, rule, regulation or treaty, (b) any change in any law, rule, regulation or treaty or in the administration, interpretation, implementation or application thereof by any governmental authority or (c) the making or issuance of any request, rule, guideline or directive (whether or not having the force of law) by any governmental authority; provided that notwithstanding anything herein to the contrary, (i) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all requests, rules, guidelines and directives thereunder or issued in connection therewith and (ii) all requests, rules, guidelines and directives promulgated by the Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities will, in each case be deemed to be a "Change in Law," regardless of the date enacted, adopted or issued.

**11. Increased Costs** If you determine that any Change in Law regarding capital or liquidity requirements has or would have the effect of reducing the rate of return on your capital, if any, as a consequence of this Note or the Loan made hereunder, to a level below that which you could have achieved but for such Change in Law (taking into consideration your policies with respect to capital adequacy and liquidity), then from time to time I will pay you such additional amount or amounts as will compensate you for any such reduction suffered.

You will deliver to me a certificate setting forth the amount necessary to compensate you, which certificate will be conclusive absent manifest error. I will pay you the amount shown as due on any such certificate within 10 days after receipt thereof.

**12. Representations and Warranties** I represent and warrant to you that on the date of this Note:

a. my execution, delivery and performance of this Note (i) do not contravene any law, rule, regulation, court decree or order or contractual restriction binding on or affecting me and (ii) will not result



CURRENT CURRENT CURRENT



in a breach of, or entitle any party to terminate or call a default under, or result in the acceleration or required prepayment of, any loan agreement, indenture, mortgage, note, lease or other agreement binding on or otherwise affecting me;

b. except as disclosed in writing to you prior to the date of this Note, there is no (i) unsatisfied order, judgment or other proceeding affecting me, (ii) pending tax assessment affecting me or (iii) pending or, to my knowledge, threatened, investigation, litigation or proceeding affecting me, that in each case (x) could be reasonably expected to have a Material Adverse Effect or (y) purports to affect the legality, validity, enforceability or my performance of this Note;

c. since the date of my application given to you, no event has or series of events have occurred that could be reasonably expected to, individually or in the aggregate, have a Material Adverse Effect;

d. I am not subject to any law, regulation, or list of any government agency (including, without limitation, the U.S. Office of Foreign Asset Control List) that prohibits or limits you from making this Loan to me or from otherwise conducting business with me;

e. I am not, and to my knowledge I am not associated with any person who is, (i) listed on or (ii) engages in any dealings or transaction prohibited by, Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), or any other list promulgated under the Patriot Act;

f. I am not a target of any economic sanctions, laws, regulations, embargoes or restrictive measures administered or enforced by the United States government;

g. I have timely filed all tax returns required in any jurisdiction and have paid all taxes, levies, imposts, duties, deductions, assessments, fees or other charges and withholdings (including back-up withholding) imposed by any governmental authority, including any applicable interest, expenses, additions to tax or penalties which are shown to be due and payable on such returns. I am not aware of any proposed additional tax assessment or tax to be assessed against or applicable to me; and

h. I am solvent, am able to pay my debts as they become due and now own property having a value both at fair valuation and a present fair salable value greater than the amount required to pay such debts as they mature, and I will not be rendered insolvent, or be left with insufficient capital, or be unable to pay my debts as they mature, due to my execution, delivery and performance of this Note.

"**Material Adverse Effect**" means a material adverse effect on: (a) my ability to pay my Obligations under this Note or (b) the legality, validity or enforceability of this Note.

"**Obligations**" means, collectively, my obligations to pay, as and when due and payable (by scheduled maturity, on demand or otherwise) (i) all amounts I owe from time to time in respect of this Note (including any extensions, modifications, amendments or renewals hereof), whether direct or indirect, absolute or contingent, now existing or hereafter arising, (ii) any interest and fees that accrue after the commencement by or against me of any proceeding under bankruptcy or insolvency law, regardless of whether such interest or fees are allowed claims in such proceeding and (iii) the Collection Costs.

**13. Covenants**

So long as any Obligations remain outstanding and unpaid, I will, unless you otherwise consent in writing:

a. Comply in all material respects with all applicable laws, rules, regulations and orders, such compliance to include, without limitation, paying before the same become delinquent all taxes, assessments and governmental charges imposed upon me, except to the extent I contest them in good faith and by appropriate proceedings and for which I have established appropriate reserves;

b. Not (i) be or become subject to at any time to any law, regulation, or list of any government agency (including, without limitation, the U.S. Office of Foreign Asset Control List) that prohibits or limits you from making this Loan to me or from otherwise conducting business with me, or (ii) fail to provide documentary and other evidence of my identity that you may request at any time to enable you to verify my identity or to comply with any applicable law or regulation, including, without limitation, Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318; and

c. Notify you immediately in the event I become listed on Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), or any other list promulgated under the Patriot Act or am indicted, arraigned, or custodially detained on charges involving money laundering or predicate crimes to money laundering.

**14. Default**

I will be in default under this Note if any of the following events occur:

a. I fail to pay any of my Obligations when due;
b. I fail to observe any other term or condition of this Note;
c. I cease to be a partner at my current firm or company;
d. I die, become incapacitated or incompetent, or my income is substantially reduced;



CURRENT

CURRENT

e. I make any representation or warranty under or in connection with this Note or any financial statement delivered in connection herewith that is false or misleading in any way;
f. I become insolvent, take advantage of any insolvency law or any proceeding in bankruptcy or insolvency is started by or against me;
g. A receiver or conservator is appointed for any of my property;
h. I make an assignment for the benefit of creditors;
i. I fail to generally pay my debts as they become due;
j. I admit in writing my inability to generally pay my debts; or
k. An event occurs which in your sole opinion would have a Material Adverse Effect.

**15. Consequences of Default** If I am in default, the Loan will become and be immediately due and payable upon your notice to me. Notwithstanding the preceding sentence, if I am in default under part f, g or h of the section above headed Default, the Loan will become and be immediately due and payable without your having to give me any notice.

**16. Waiver; Delay in Enforcement** I specifically waive any legal requirements of presentment for payment, demand, protest, notice of dishonor and notice of protest of this Note. You can delay enforcing any of your rights without losing them.

**17. Collection and Enforcement Costs** I agree to pay, on demand, all costs and expenses, if any, in connection with the collection or enforcement of the Loan under the terms of this Note (whether through negotiations, legal proceedings or otherwise), including without limitation reasonable attorneys' fees and their disbursements, court costs and your disbursements in connection with the enforcement of your rights under this Note (collectively, the "**Collection Costs**").

**18. Changes** The terms of this Note may not be changed without written authorization from you and me.

**19. Heirs; Executors** My Obligations under this Note will also be binding upon my heirs, executors and administrators.

**20. More Than One Signer** If there is more than one signer of this Note, each signer is fully and personally responsible for complying with all its terms and conditions, including the promise to pay the full amount owed under this Note. You may enforce your rights under this Note against each signer separately or against all signers together. This means that any one signer individually may be required to pay all amounts owed under this Note, including any advances made at the request of and to any one of them. A release of any signer from the obligations of this Note will in no way release any other signer from his or her obligations.

**21. Transfer of Note and Discharge of Liability** I understand that I may not assign or otherwise transfer any of my rights or Obligations under this Note without your prior written consent. You may transfer this Note to one or more third parties, and the transferee(s) will immediately become vested with all the powers and rights given to you with respect to this Note; and you will then be forever relieved and fully discharged from any liability or responsibility in the matter.

**22. Pledge to the Federal Reserve** You may at any time pledge or assign a security interest in all or any portion of your rights under this Note to secure your obligations, including any pledge or assignment to secure obligations to a Federal Reserve Bank; provided that no such pledge or assignment will release you from any of your obligations under this Note or substitute any such pledgee or assignee for you as a party to this Note.

**23. Applicable Law** I agree that this Note will be governed by the laws of the State of California.

**24. Submission to Jurisdiction** Without limiting your right to bring any action or proceeding against me or against my property arising out of or relating to my Obligations under this Note (an "**Action**") in the courts of other jurisdiction(s), I irrevocably submit to the jurisdiction of any California State or federal court sitting in the county in which the Office is located, and I irrevocably agree that any Action may be heard and determined in such California State court or in such federal court. I irrevocably waive to the fullest extent that I may effectively do so, the defense of an inconvenient forum to the maintenance of any Action in any jurisdiction. I irrevocably agree that the summons and complaint or any other process in any Action in any jurisdiction may be served by mailing to any of the addresses set forth below or by hand delivery to a person of suitable age and discretion at any of the addresses set forth below. Such service will be complete on the date such process is so mailed or delivered. I may also be served in any other manner permitted by law.

**25. Credit Authorization** I authorize you and your affiliates to obtain credit reports on me from time to time until the Obligations are paid in full.

**26. Patriot Act** I acknowledge that pursuant to the requirements of the Patriot Act, you are required to obtain, verify and record information that will allow you to identify me in accordance with the Patriot Act. I will promptly following a request by you from time to time, provide all documentation and other information that you request in order to comply with your ongoing obligations under the Patriot Act.

**[Signature Page to follow]**

CURRENT

Name of Borrower: **Jennifer A. Kash**

Signature of Borrower:____________________________

Address: **1830 McAllister Street**
**San Francisco, CA 94115**

Name of Borrower:

Signature of Borrower:____________________________

**Auto-Debit Authorization and Agreement ("Authorization")**

I authorize and direct Citibank, N.A. ("Citi") to initiate scheduled debit entries ("Debits") to my Citi account indicated below to pay interest due under this Note Monthly in arrears. This Authorization will remain in effect until I terminate it by written or electronic notice to Citi. At least 10 days in advance of each Debit, Citi will notify me of the estimated amount of the Debit based on the applicable interest rate in my Note followed by notice of the actual amount of the Debit sent at the time of the actual Debit. I understand that the actual amount of the Debit to my account may differ from the estimated amount due to changes in the interest rate index or account balance at the time the actual Debit is initiated.

I understand that I have the right to stop these Debits by calling or writing to Citi at the address listed above, in time for Citi to receive my request 3 Business Days or more before the actual Debit is scheduled to be made. I also understand that I have the right to end these authorized payments at any time by calling or writing to Citi at the same address. Citi reserves the right to cancel the terms of this Authorization if there are insufficient funds in my account for any three consecutive Debits. I understand and agree that if my account does not have sufficient funds to make my interest payment, Citi will not be responsible or liable for any penalties or charges assessed as a result of such insufficiency. Citi also reserves the right to change the terms and conditions of this Authorization after 21 days prior written notice to me.

Account Number:________________

Account Holder Signature:____________________
**Jennifer A. Kash**

Date: 10/25/17